# CHARLESTON

## WEESE v. YOKUM et al.

Submitted June 17, 1907.    Decided November 12, 1907.

1. WITNESSES—*Competency—Transaction with Decedent.*
   A father who has emancipated his infant daughter is not there-
   after by section 23, chapter 130, Code, disqualified, in a suit by
   her against the estate of a decedent for the value of services ren-
   dered the latter in his life time, to give evidence on her behalf of a
   personal transaction or ·communication between witness and de-
   cedent.  (p. 551 )

2. PARENT AND CHILD—*Emancipation—Evidence.*
   Such emancipation may be established by oral or written evi-
   dence; or it may be proved by circumstantial evidence; or it may
   be implied.  (p. 552.)

3. SAME—*Emancipation—Irrevocable.*
   An agreement for emancipation between a father and his infant
   child is irrevocable.  (p. 552.)

4. WITNESSES—*Competency—Transactions with Decedent.*
   A claim for wages subsequently accruing to a child thus eman-
   cipated can in no legal sense be said to be derived from, through
   or under the parent by assignment or otherwise, so as to disqualify
   the latter, under section 23, chapter 130, Code, from giving evi-
   dence on behalf of the child, in an action to recover such wages,
   as to a personal transaction or communication between the witness
   and the decedent for whom services were rendered.  (p. 552.)

Error to Circuit Court, Randolph County.

Action by Myrtle M. Weese, by her next friend, against
H. Yokum, administrator, and another.  Judgment for plain-
tiff, and defendant brings error.

.  *Affirmed.*

JARED L. WAMSLEY, for plaintiffs in error.

C. H. SCOTT, for defendant in error.

MILLER, PRESIDENT:

Myrtle M. Weese, a minor daughter of Henry Weese,
suing by next friend, brought an action in *assumpsit* in the
circuit court against the administrator and administratrix of
the personal estate of Geo. W. Leonard, deceased, and re-
covered judgment for $725.    The declaration is in two

counts—the first a *quantum meruit* count for work and
services; the second, upon a contract alleged to have been
made with decedent in May, 1895, for services and compen-
sation at $2.50 per week, under which the plaintiff alleges
she had rendered services thereafter for seven years, until
the death of said decedent, and had received no part of the
stipulated compensation. Beginning with May, 1896, and
annually thereafter up to and including March, 1903, the bill
of particulars filed charged the decedent's estate with the
sums then due, at the rate of $2.50 per week, with interest,
aggregating $1,283.30. There was a demurrer to the declar-
ation and each count thereof; but the action of the court in
overruling the same is not assigned as error, and, under our
rules, we must treat it as waived. The errors assigned and
argued by plaintiff in error are the judgment overruling ·
the motion to set aside the verdict and grant a new
trial; that the verdict was excessive; and that the
court improperly permitted Henry Weese, a witness
for the plaintiff, to answer two certain questions covered
by bills of exception. All other errors will be treated as
waived.

It is proper we should first dispose of the questions rela-
ting to the testimony of Henry Weese. As they mainly re-
late to his qualification as a witness, they may be considered
together. The first question was: "State whether you as
the father of this girl agreed that she should go there(the resi-
dence of Geo. W. Leonard) to live and whatever she would
earn would be her own;" to which, over the objection of the
defendants, he answered: "Yes, sir." The second was:
"State whether you agreed with Mr. Geo. W. Leonard,
the deceased, that you would demand or expect him to pay
you anything that might be earned by your daughter;" and,
over like objection, he answered: "No, sir, he
was not to pay me." The objection to these questions is
based upon section 23, chapter 130, Code, providing that
"no party to any action, suit or proceeding, nor any person
interested in the event thereof, nor any person from, through
or under whom any such party or interested person derives
any interest or title by assignment or otherwise, shall be
examined as a witness in regard to any personal transaction
or communication between such witness and a person at the

time of such examination deceased." The only ground of objection argued here is that the witness is interested in the result of this action.    The only other ground, based on the statute which could be assigned is that the plaintiff derived some interest by assignment or otherwise from him.    With respect to the first question, we do not think it necessarily, or by any fair implication, relates to any personal transaction or communication with the deceased.    While the second does have such relation, yet the testimony given was so far immaterial to any real issue in the case as not to render its admission reversible error.    The testimony covered by both these questions and answers was offered, not to prove a contract between the witness and the deceased for the services of the plaintiff, but to show an emancipation by him of his daughter, her freedom to contract with the deceased for the services rendered, and her right to maintain this action. The fact of emancipation was established by the witness' answer to the first question.    Such emancipation may be established by oral or written evidence; or it may be proved by circumstantial evidence; or it may be implied.    *Trapnell* v. *Conklyn*, 37 W. Va. 242, 254.    The character of other evidence in the case covering this subject was such that, without this testimony of Henry Weese, the jury would necessarily imply an emancipation; and it was not necessary, in order to entitle the plaintiff to recover, to show a contract with the deceased for, or knowledge by him of, emancipation.    *Corey* v. *Corey*, 31 Am. Dec. 117; *Whiting* v. *Earle*, 15 Am. Dec. 207.    And it is held that an agreement between a father and his infant child that the latter may have his earnings is irrevocable.    *More* v. *Welton*, 16 Am. Dec. 73, and note.

But was the witness disqualified to give this evidence, even if material, on behalf of the plaintiff, by reason of any derivative interest acquired by the plaintiff from him by assignment or otherwise?    This presents the question whether a claim for wages by an infant thus emancipated is derived, through assignment or otherwise, from his parent.    In this case the emancipation occurred prior to any claim for services against the decedent, and when the witness had no claim which he could assert in a court of law or elsewhere against the decedent.    Having been emancipated and given

power to contract for wages, which was thereafter irrevoc-ble, the claim of the child for wages subsequently accruing to her could in no legal sense be said to be derived from, through or under her father by assignment or otherwise. The principle underlying this proposition was distinctly af-firmed in *Godine* v. *Kidd*, 64 Hun. 585, 593. This case in-volves specific execution of an agreement made by a mother on behalf of her infant daughter whereby, in consideration that the father and mother should emancipate the daughter and permit the decedents to bring her up as their own and give her their name, the latter agreed to make her their heir and that any property they might have at their decease should go to her in case she survived them. The court said that, had this been a contract made by the mother for her own benefit and assigned to the daughter, there might be some force in the suggestion that the mother was an incom-petent witness because the daughter's interest had been de-rived from her mother. "But," says the court, "it is clear that this is a case where the contract was made by the mother on behalf and for the benefit of the child; and her interest was in no way derived from or received through her mother. We think the test of this objection is to be found in a con-sideration of whether or not the mother could have main-tained any action for this property, or whether she at any time or under any circumstances would have any interest therein." The same principle was announced in *Lashaw* v. *Croissant*, 88 Hun. 206, a case involving the right of a hus-band to give testimony in a suit by the wife on a claim for services rendered by her to third persons under her agree-ment, with him that she should receive the recompense therefor. It was held that in such case the wife did not derive her interest by assignment from the husband, and that he was therefore not prohibited by the statute in such cases from testifying in her behalf as against the estate of the deceased persons for whom the services were rendered. It was so ruled also in *Slack* v. *Norton*, 111 Mich. 213, a case involving facts quite similar to those in the New York cases. From these authorities we conclude that the witness was not disqualified or prohibited from giving testimony by the pro-visions of our statute.

Was, then, the verdict plainly contrary to the evidence?

Or was it excessive? The latter question is of course involved in the first. The evidence shows that the plaintiff, being emancipated by her father, went to live with the deceased, Geo. W. Leonard. She was between eleven and fifteen years of age; the evidence leaves her exact age uncertain. Her mother had died. It appears that she was a strong, hearty girl, with much aptitude for domestic services. She was sent to school and provided with clothing at intervals during the first two or three years of her service. There is no evidence of any specific contract for compensation between the plaintiff and deceased, except such as may be implied from the facts and circumstance in relation to her employment and services. But there is positive proof that the deceased declared to at least one of the witnesses, after the plaintiff had gone away and returned to his home some four years before his death, that if she stayed with him he would more than pay her. There is also evidence of numerous declarations made by the deceased to other witnesses that he proposed to take good care of and provide for her and give her a house and lot; and specific houses and lots were mentioned as the one he proposed to give her as she might prefer. There is evidence, somewhat conflicting, that during the last years of her service, when she had reached the age of maturity, she did laborious domestic work, and was of great service in Mr. Leonard's family. He declared, to one witness at least, that he could not keep house without her, that " she was worth her weight in gold." Witnesses give testimony as to the value of such services as the plaintiff rendered, based on prevailing prices at the time and place covered by the claim, ranging all the way from $1.50 to $2.50 per week. The plaintiff was not permitted to testify in her own behalf as to any transaction or contract she may have made with the deceased. Her lips were sealed against him by the inhibition of the law. But we think the evidence on the whole was sufficient to establish a contract, at least by implication, for payment of services rendered. It is argued that such contract could not be implied from declarations or promises of gifts by the deceased. It is true, such promises would not support an action for specific execution. This evidence seems to have been admitted without objection or exception. The jury may have given some weight to it.

in considering their verdict and as tending to show the value of the service, in the estimation of the deceased. The deceased died without having made any provision for the plaintiff. The verdict does seem large, but we can not say it is unsupported by the evidence. The record does not disclose that it was the result of any of the elements which, under the rules of practice so often declared by this Court, would justify us in disturbing it. For these reasons we affirm the judgment.

*Affirmed.*